UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GERALD CYMBALSKY,

                              Plaintiff,              **MEMORANDUM
                                                     AND ORDER**
        -against-                                    23-CV-3104 (SIL)

522 SHORE ROAD OWNERS, INC., JAMIE
COHEN, CHO MANAGEMENT, ADAM
FINKELSTEIN LAW FIRM, CHARLES H.
GREENTHAL CO., KAGAN LUBIC LEPPER
FINKELSTEIN & GOLD LLP, and KATO LIN,

                              Defendants.
----------------------------------------------------------------X

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this statutory racketeering and fair housing litigation are two motions to dismiss *pro se* Plaintiff Gerald Cymbalsky's ("Plaintiff" or "Cymbalsky") Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [43], [45]. The first motion is by Defendants Adam Finkelstein, Esq. ("Finkelstein") and Kagan Lubic Lepper Finkelstein & Gold LLP ("KLLFG" and together, the "Finkelstein Defendants"), DE [43], and the second is by Defendants 522 Shore Road Owners, Inc. ("522 Shore Road"), Kato Lin ("Lin"), First Service Residential New York, Inc. ("First Service Residential"), Charles H. Greenthal Management Co. ("Greenthal Management"), and Jaime Cohen ("Cohen" and collectively, the "Co-op Defendants"). DE [45]. For the reasons set forth herein, both

1

motions to dismiss are granted and Plaintiff's Amended Complaint is dismissed with prejudice in its entirety.[1]

## I. BACKGROUND

### A. <u>Facts</u>

The following facts are taken from the Amended Complaint ("Am. Compl."), DE [18-1], and are accepted as true for purposes of the instant motions. Given Plaintiff's *pro se* status, to the extent there are facts alleged in the original Complaint, DE [1], or stated in Plaintiff's opposition to Defendants' motions, DE [45-6], that are favorable to Plaintiff, the Court considers them as well. *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Because [the plaintiff] is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint."); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13 Civ. 5322(KPF), 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (considering facts alleged in the *pro se* plaintiff's original complaint "that [had] not been repeated in [his] Amended Complaint"). Although the exact nature of Plaintiff's claims is unclear and difficult to discern, as a *pro se* litigant, the Court construes his allegations as liberally as possible. *See Hammer v. Amazon.com*, 392 F. Supp. 2d 423, 427 (E.D.N.Y. 2005) ("[T]he Court recognizes that Plaintiff is proceeding *pro se*, and affords the Complaint its most liberal construction.").

---

[1] This action is before this Court for all purposes pursuant to 28 U.S.C. § 636(c). DE [55].

1.    The Parties

Plaintiff resides at 522 Shore Road, Apt. 3WW, Long Beach, New York (the "Property").  *See* Am. Compl. § 1(A).[2]  As a result of a 2007 car accident, he suffers from severe osteoarthritis, requiring the use of a walker, as well as a persistent open leg wound.  *See* Plaintiff's Opposition to Defendants' Motions to Dismiss ("Pl.'s Opp'n"), DE [45-6], at 3; Original Complaint ("Compl."), DE [1], § III(C).  Cymbalsky further alleges that he has an anxiety disorder and is morbidly obese.  *Id.*

522 Shore Road is a co-op that co-owns with Plaintiff the Property in which Plaintiff lives.  Am. Compl. § 1(B); *see* Co-op Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Co-op Mem."), DE [45-5], at 3-4.  Lin is the President of the 522 Shore Road co-op board.  Am. Compl. § 1(B).  First Service Residential and Greenthal Management are the property management companies responsible for the building in which Plaintiff resides and Cohen is the building manager.[3]  *Id.*  The Finkelstein Defendants provided legal services to the Co-op Defendants, including with respect to Plaintiff and the events related to this action.  *Id.*; Compl. § I(B); Finkelstein Defendants' Memorandum of Law in Support of Motion to Dismiss ("Finkelstein Mem."), DE [43-8], at 2.

---

[2] On June 30, 2023, Plaintiff sought leave to file an amended complaint, attaching a proposed amended complaint as an exhibit to his motion.  *See* DE [18].  The Court granted Plaintiff's motion and instructed him to file the amended complaint by August 17, 2023.  *See* Electronic Order dated July 18, 2023.  He did not do so.  Nevertheless, the Court considers the allegations Plaintiff submitted in his proposed amended complaint and treats the proposed amended complaint as the operative pleading.

[3] The Co-op Defendants state that Plaintiff incorrectly named Charles H. Greenthal Management Co. as Cho Management and Charles. H. Cresthall Co.  *See* Co-op Mem. at 1 n.1.  They further clarify that, after Plaintiff commenced this action, First Service Residential New York, Inc. acquired Charles H. Greenthal Management Co.  *Id.*  This distinction does not substantively affect Plaintiff's claims.

### 2.    Plaintiff's Medical Treatment

In September 2020, Plaintiff entered the hospital to receive antibiotic treatments for an infection in his leg.  Am. Compl. § III.  He was unable to receive treatment in his home due to spiking Coronavirus cases, and was therefore required to receive treatment in a skilled nursing facility until December 2020.  *See* Compl. § III(C).  Although Plaintiff asserts that his apartment would have offered "perfect isolation," he states that it was a "mess."  Am. Compl. § III.

When Cymbalsky eventually returned home, a person he identifies as "Dan the new super" ("Dan") requested $100 to allow a cleaning crew to clean Cymbalsky's apartment.  *Id.*  Plaintiff does not state Dan's last name, and Dan is not a defendant.  When Cymbalsky informed the management company of the demand for $100, Defendant Cohen told him "that's the way it works.  We get tips.  If we get a contractor, we get something for our help."  *Id.*  Plaintiff does not allege that he paid Dan $100 or that Dan's request was illegal.  Cymbalsky alleges that his January rent invoice (of an unspecified year) contained a legal fee for $800.  *Id.*  Plaintiff requested clarification from the management company and was informed the charge was for Defendant Finkelstein talking to the City of Long Beach Building Commissioner "about what to do about Gerald Cymbalsky."  *Id.*

Plaintiff returned to the hospital from March 6, 2021 until September 2021.  *Id.*  He alleges that, during this time, Adult Protective Services was "looking for [him]," but does not state why.  *Id.*  Cymbalsky alleges that, on March 25, 2021, police and fire personnel "broke into" his apartment.  *Id.*  On an unspecified date, Plaintiff

4

returned to his apartment and "found cash and silver was missing." *Id.* He does not allege who took the cash and silver. Cymbalsky states that, at some point, Dan was away and that Cohen "left the door unattended for the four days [Dan] was gone." *Id.* Plaintiff does not specify the door that was allegedly left unattended, whether any Defendant was required to attend the door, or whether leaving the door unattended resulted in any harm to him.

### 3. State Court Proceedings

On January 25, 2022, 522 Shore Road commenced an action against Plaintiff in the Supreme Court of the State of New York, Nassau County, bearing Index Number 600923/2022 (the "State Court Action"). *See* Compl. § III(C); Am. Compl. § III; Pl.'s Opp'n at 2. In the State Court Action, 522 Shore Road sought a temporary restraining order and a preliminary and permanent injunction granting access to Plaintiff's apartment so that it could "be cleaned of the extreme unsanitary and hoarding condition caused by [Cymbalsky]."[4] *See* Affirmation of Kato Lin in Support of Motion to Dismiss ("Lin Aff."), DE [43-2], Ex. D. Plaintiff refers to this as a "furniture eviction" proceeding and it serves as the primary basis for the claims he asserts in this action. *See* Am. Compl. § III. The Finkelstein Defendants represented 522 Shore Road in the State Court Action. *Id.* at § I(B), III; Lin Aff. Ex. D.

---

[4] Although the Court does not rely on the facts alleged in the State Court Action in ruling on the instant motions, the Court recognizes that 522 Shore Road sought a Court Order granting them the right to enter and clean Plaintiff's apartment due to complaints of unsanitary conditions. *Lynn v. McCormick*, No. 17-CV-1183(CS), 2017 WL 6507112, at *3 (S.D.N.Y. Dec. 18, 2017) ("A court may take judicial notice of public records such as pleadings . . . and other documents from prior litigation, including state court cases, but it does so not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation and citation omitted).

Plaintiff alleges that, although a cleaning service cleaned his apartment in January 2021, Cohen and 522 Shore Road "waited until February 2022" to commence the State Court Action. Compl. § III(C). Cymbalsky claims that, by commencing the State Court Action, Defendants sought to "reap a huge profit from [his] thirty years of equity growth." Am. Compl. § III. Plaintiff alleges that he "won" the State Court Action, including that, in January 2023, the Clerk of the Court in the State Court Action told him that he had "defeated the lawsuit." *Id.* Cymbalsky acknowledges that he was not required vacate his apartment or pay attorney's fees. *Id.*

## B.  **Procedural Background**

By way of a Complaint dated April 17, 2023, Plaintiff commenced this action against all Defendants. DE [1]. He neither enumerated specific causes of action nor articulated which of his allegations pertained to which Defendant. *Id.* On June 30, 2023, Cymbalsky filed an Amended Complaint, which is the operative pleading in this action. DE [18-1]. Although the exact nature of his claims remains difficult to discern, construing his allegations as liberally as possible, Plaintiff asserts causes of action against each Defendant for violations of:  (1) the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; (2) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; (3) his constitutional rights to privacy; and (4) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq. Id.* Cymbalsky seeks to recover:  (1) exemplary damages "as Linn and Jamie Cohen knew [he] was [in] extended skilled nursing"; (2) $5,000 from lost silver and cash; (3) $500,000 to "protect value decline from questionable cost over runs and other management

action." Am. Compl. § IV.  He also seeks equitable relief of having a "black leather chair placed in [the] lobby so [he] can sit" and allowing him to leave his own lounge chair on the pool deck during the summer.  *Id.*

## II.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949.  In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citation omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe

the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted). Nevertheless, "the court need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Kwon v. Santander Consumer USA*, No. 15-CV-3352(SJF)(AKT), 2017 WL 5495811, at *3 (E.D.N.Y. Apr. 18, 2017) (internal quotation omitted).

## III. DISCUSSION

The Court interprets Plaintiff's Amended Complaint to assert claims against each Defendant for: (1) a civil RICO violation; (2) an FHA violation; (3) a constitutional violation of his right to privacy; and (4) an FDCPA violation. Even applying the liberal standards described above, Cymbalsky fails to state a claim against any Defendant under any theory of liability.

### A.   **Civil RICO Act Claim**

The RICO statute provides in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c). Although the RICO Act generally applies to criminal matters, Section 1964(c) provides for a civil remedy. *Id.* at § 1964(c).

To state a civil RICO violation, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Aerowest GmbH v. Freitag*, No. 15-CV-2894(LDW), 2016 WL 3636619, at *2 (E.D.N.Y. June 28, 2016)

(quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). "To allege a 'pattern of racketeering activity,' a plaintiff 'must plead at least two predicate acts' – *i.e.*, two racketeering activities – and 'must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *Giuliano v. Omni Hybrid Holdings, LLC*, No. 20-CV-3334(RRM)(RML), 2021 WL 9037638, at *10 (E.D.N.Y. June 22, 2021) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995)). The conduct alleged must also affect interstate or foreign commerce. 18 U.S.C. § 1962(c). Courts in the Second Circuit have observed that establishing a civil RICO claim is exceedingly difficult and that a majority fail at the pleading stage. *See, e.g.*, *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017) ("[C]ourts have expressed skepticism toward civil RICO claims."); *Sky Med. Supply Inc. v. Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) ("[A]lthough RICO may be a potent weapon, plaintiffs wielding RICO almost always miss the mark.") (internal quotation omitted).

Plaintiff fails to state a civil RICO violation against any Defendant. First, Plaintiff does not allege two predicate acts as required to state a civil RICO claim. Although Cymbalsky does not specify the predicate acts that form the basis of his RICO claims, construing his pleadings as liberally as possible, the only conduct that would possibly fall under the purview of the RICO statute is the alleged disappearance of $5,000 and silver and 522 Shore Road's commencement of the State Court Action. Am. Compl. § IV; 18 U.S.C. § 1961(1)(A) (defining robbery as a "racketeering activity"); *Black v. Ganieva*, 619 F. Supp. 3d 309, 342 (S.D.N.Y. 2022)

(observing that "litigation activity" may serve as a predicate act where the plaintiff alleges a "concerted abuse of the legal system").

Standing alone, each of these acts is plainly insufficient to establish a pattern of racketeering activity. *See Smulley v. Fed. Housing Fin. Agency*, 754 F. App'x 18, 24 (2d Cir. 2018) ("[T]o the extent [the plaintiff] alleges that any Defendants made false representations and filed false documents in [the plaintiff's] state court action(s), those acts do not constitute RICO predicates."); *Kim v. Kimm*, 884 F.3d 98, 101 (2d Cir. 2018) (holding that "a single frivolous, fraudulent, or baseless lawsuit . . . alone cannot constitute a viable RICO predicate act"); *Javino v. Denton*, No. 22-CV-1072(JMA)(ARL), 2024 WL 4189005, at *10 (E.D.N.Y. Sept. 13, 2024) (holding that, even if the defendants filed false declarations in a state court action, that alone would not be enough to state a civil RICO claim); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01-CV-1574(ILG), 2002 WL 719471, at *7 (E.D.N.Y. Mar. 1, 2002) ("One predicate act is therefore *per se* insufficient to establish[] a civil RICO conspiracy."); *Trautz v. Weisman*, 809 F. Supp. 239, 244 (S.D.N.Y. 1992) (holding that a single predicate act was insufficient to state a civil RICO claim). This is particularly true here, as Plaintiff does not allege that any Defendant was responsible for the disappearance of cash or silver from his apartment.

Moreover, Cymbalsky does not allege that the disappearance of cash and silver are related to the commencement of the State Court Action. As the RICO Act requires that the predicate acts forming the basis of a RICO claim be related, Cymbalsky fails to allege a pattern of racketeering activity. *See GICC Cap. Corp.*, 67 F.3d at 465

(holding that the plaintiff "must show that the predicate acts are related and that they amount to, or pose a threat of, continuing activity"); *Williams v. Long Beach Mortg. Co.*, No. 19-CV-970(NSR), 2020 WL 4735354, at *7 (S.D.N.Y. Aug. 14, 2020) (dismissing civil RICO claim where the plaintiff only alleged one definite predicate act); *Reich v. Lopez*, No. 13-CV-5307(JPO), 2015 WL 1632332, at *2-3 (S.D.N.Y. Apr. 13, 2015) (holding that the plaintiff failed to state a civil RICO claim where the predicate acts were not sufficiently related); *Lavian v. Haghnazari*, 884 F. Supp. 670, 682 (E.D.N.Y. 1995) ("To constitute a pattern, the RICO predicate acts (1) must be related, and (2) reveal (a) continued, or (b) the threat of continued, unlawful conduct.").

To the extent Cymbalsky alleges that Marvin Gold Management "plead [*sic*] guilty to racketeering" in March 2000, *see* Am. Compl. § III, he again fails to allege that any such conduct is related to the conduct about which he currently complains or that it poses an ongoing threat.  Accordingly, any such allegations are irrelevant. *GICC Cap. Corp.*, 67 F.3d at 465; *Williams*, 2020 WL 4735354, at *7; *Reich*, 2015 WL 1632332, at *2-3.  Moreover, as Plaintiff alleges that Marvin Gold Management's conduct occurred prior to March 2000 (when it allegedly pled guilty), *see* Am. Compl. § III, it is too far removed to demonstrate a "pattern" for purposes of a civil RICO claim.  *See* 18 U.S.C. § 1961(5) (stating that a "pattern" requires commission of an act of racketeering activity "within ten years . . . after the commission of a prior act of racketeering activity").

11

Finally, Plaintiff fails to allege that Defendants' conduct affected interstate commerce. Rather, Cymbalsky alleges that Defendants, all of whom he alleges are based in New York, interfered with rights related to his apartment, which is also located in New York. Am. Compl. § I(B), III. Although RICO establishes only a "minimal" standard in this regard, *DeFalco*, 224 F.3d at 309, there still must be "some factual allegations of a nexus with interstate commerce." *Aliev v. Borukhov*, No. 15-CV-6113(ERK)(JO), 2016 WL 3746562, at *12 (E.D.N.Y. July 8, 2016). As Plaintiff does not plausibly allege that Defendants' conduct had even a minimal effect on interstate commerce, he fails to state a civil RICO claim. *See Santana v. Adler*, No. 17-CV-6147(AT)(SDA), 2018 WL 2172699, at *8 (S.D.N.Y. Mar. 26, 2018) (holding that the defendants' conduct did not affect interstate commerce where "all of the parties live[d] in New York and [the plaintiff's apartment] [was] in New York").

Based upon the foregoing, Plaintiff fails to state a civil RICO cause of action against any Defendant. Accordingly, Defendants' motions to dismiss are granted with respect to Cymbalsky's civil RICO claims.

## B. <u>Fair Housing Act Claim</u>

Pursuant to the FHA, it is illegal "to discriminate against any [disabled] person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2). To survive a motion to dismiss an FHA claim, the plaintiff "must plausibly allege that he '(1) is a member of a protected class, . . . (2) suffered an adverse . . . action, and (3) has at least minimal support for the proposition that the [housing provider] was

motivated by discriminatory intent.'" *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (alterations in original) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062(PKC)(ST), 2019 WL 1376840, at *3 (E.D.N.Y. Mar. 27, 2019) (holding that a plaintiff states an FHA discrimination claim by alleging: "(1) that [she is a] member[ ] of a protected class; (2) that [she] sought and w[as] qualified to rent or purchase the housing; (3) that [she] w[as] rejected; and (4) that the housing opportunity remained available to other renters or purchasers."). The plaintiff "must establish that the basis upon which he was discriminated against was 'a significant factor' in the position taken by the defendants." *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 226 (S.D.N.Y. 2016) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002)).

Plaintiff fails to state an FHA violation against any Defendant. As an initial matter, Plaintiff does not allege that either of the Finkelstein Defendants owned, managed, or were otherwise affiliated with the Property other than representing 522 Shore Road in the State Court Action. Therefore, Cymbalsky's FHA claim against them fails as a matter of law. *See Hannan v. Rose*, No. 18-CV-9878(PGG)(DF), 2022 WL 21770560, at *19 (S.D.N.Y. Mar. 15, 2022) (holding that an FHA claim was not viable where the defendant did "not own, provide, or manage the apartment from which Plaintiff allege[d] he was evicted").

Plaintiff also fails to allege that any Defendant discriminated against him. To the contrary, he alleges that he is still permitted to rent his apartment and that he

"won" in the State Court Action. Am. Compl. § III. He does not allege that he applied for and was denied the opportunity to rent or purchase housing or that he was denied access to his own property. Nor does he allege that he requested and was denied any accommodation to facilitate his alleged disabilities. To the extent that Plaintiff alleges that Defendants commenced a "furniture eviction" against him, he concedes that he was not deprived of any property or access to his apartment as a result thereof. *Id.* As Plaintiff's allegations demonstrate that he continues to reside in his apartment and has not suffered any adverse action, he fails to allege that Defendants discriminated against him under the FHA. *Francis*, 992 F.3d at 73; *Currin v. Glenwood Mgmt. Corp.*, No. 20-CV-6047(DLC), 2021 WL 4710485, at *3 (S.D.N.Y. Oct. 8, 2021) (dismissing FHA claim where the plaintiff did not allege that the defendant denied him the ability to use any specific facility as a result of his disability); *Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 375 (E.D.N.Y. 2008) ("Even though typical FHA claims apply to those seeking to rent or purchase housing, the language of the statute is broad enough to encompass an existing tenant who is denied access to [his] dwelling because of a handicap.") (internal quotation omitted).

Finally, even if Plaintiff sufficiently pled discriminatory conduct, he does not allege that it was the result of his alleged disability. Although a plaintiff "need [not] allege discriminatory animus for [his or] her disparate treatment claim to be sufficiently pleaded," *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), "a claim is appropriately dismissed where a complaint's factual allegations do not permit the

conclusion that the complained-of conduct occurred because of discriminatory animus." *Logan*, 175 F. Supp. 3d at 226. Commencement of the State Court Action is the only conduct alleged that is pertinent to Plaintiff's FHA claim. *See* Am. Compl. § III. Cymbalsky does not, however, allege that 522 Shore Road commenced the State Court Action for a discriminatory purpose, and instead alleges that 522 Shore Road simply sought to profit from his "thirty years of equity growth."[5] *Id.* Although this allegation is not particularly clear, there is no plausible interpretation that would support an inference of a discriminatory animus or a causal nexus to Plaintiff's alleged disability. *See Logan*, 175 F. Supp. 3d at 228 (dismissing FHA claim where there was "simply nothing other than Plaintiff's legal conclusions in the [complaint] from which the court could surmise that 'animus against the [disabled] was a significant factor' in any position taken by Defendants"). Accordingly, Defendants' motions to dismiss are granted with respect to Plaintiff's FHA claims.

### C.    **Constitutional Civil Rights Claims**

Plaintiff fails to state a claim for violation of his constitutional rights against any Defendant. Although the Amended Complaint does not contain facts sufficient to discern the exact nature of Plaintiff's constitutional claim, in his basis for federal jurisdiction, he states, "Constitutional individual rights to privacy, to own property, to be away." Am. Compl. § II(A). Regardless of Plaintiff's theory of liability, it is well-

---

[5] Even assuming that Plaintiff was hospitalized because of a disability when 522 Shore Road commenced the State Court Action, Cymbalsky does not allege that 522 Shore Road did so ***because of*** his disability. Although not dispositive, it certainly bears noting that Plaintiff also does not allege that his hospitalization hindered his ability to defend against the State Court Action and, in fact, he alleges that he "won" in the State Court Action. Am. Compl. § III.

established that a claim of a constitutional violation may only be maintained against a state actor or entity. *See Hannan v. Rose*, No. 18-CV-9878(PGG)(DF), 2020 WL 3965341, at *14 (S.D.N.Y. Feb. 28, 2020) ("This Court agrees that Plaintiff has not adequately pleaded that Defendants were state actors, and that dismissal of Plaintiff's constitutional claims is therefore warranted."); *Rose v. Soloway*, No. 16-CV-7180(JPO), 2019 WL 688957, at *4 n.2 (S.D.N.Y. Feb. 19, 2019) ("As for [the plaintiff's] assorted constitutional claims, such claims are cognizable only where 'the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'") (quoting *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 264 (2d Cir. 2014)); *Hewett v. Leblang*, No. 12 Civ. 1713(PKC), 2012 WL 2820274, at *10 (S.D.N.Y. July 5, 2012) (dismissing claims of constitutional violations "[b]ecause a constitutional violation arises only when a defendant is a state actor").

Applying this standard, Plaintiff fails to state a constitutional civil rights violation against any Defendant.  Even liberally construing his allegations, Cymbalsky does not allege that any Defendant was a state entity or state actor, nor does he allege that any of the individual Defendants were acting on behalf of a state entity or actor.  Therefore, he fails to state a claim for a constitutional violation against all Defendants. *See Cheeks v. Montefiore Med. Ctr.*, No. 23-CV-2170(JMF), 2023 WL 8235755, at *2 (S.D.N.Y. Nov. 28, 2023) (holding that constitutional violations may only be maintained against state actors); *Coleman v. JP Morgan Chase Bank*, No. 21-CV-6406(RPK)(TAM), 2023 WL 11844263, at *7 (E.D.N.Y. Jan. 31, 2023) ("Where, as here, the plaintiff claims constitutional violations by private

16

parties, he must adequately allege that the private party qualifies as a state actor under the 'few limited circumstances' identified by the Supreme Court.") (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809, 139 S. Ct. 1921, 1928 (2019)); *Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149(NGG)(RER), 2012 WL 6827477, at *3 n.5 (E.D.N.Y. Dec. 6, 2012) (Report and Recommendation), *adopted by* 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("The Complaint makes no allegations that Defendants are state actors, or acting under the color of law with any state actor to plead a constitutional violation claim.").

In his opposition, Plaintiff states that "[t]he defendants acted as a government ignoring State and Federal fair Housing laws, used police and adult protective services to make false Inaccurate public records, interacted with nursing homes for their own financial gains, Committed Medicaid and Medicare fraud, attempted embezzled equity of infirmed shareholders, create a harassment environment of the disabled and their agency assigned home care attendants, failed to update the proprietary lease to conform with public policy, padded legal billing." Pl.'s Opp'n at 1 (errors in original). He does not, however, allege that any Defendant acted jointly with a government entity, only that they ignored state and federal laws. As there is no plausible allegation that any Defendant was acting as a government entity, his constitutional claims fail. *See Coleman*, 2023 WL 11844263, at *7; *Hinds*, 2012 WL 6827477, at *3 n.5. Accordingly, Defendants' motions are granted with respect to Plaintiff's claims for violation of his Constitutional rights.

D.    **FDCPA Claims**

Although Plaintiff does not allege facts related to the collection of a debt in his Amended Complaint, in his basis for jurisdiction, he cites "debt collection." *See* Am. Compl. § II(A). Again construing his allegations as liberally as possible, the Court evaluates whether Cymbalsky states an FDCPA violation. He does not.

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see* 15 U.S.C. § 1692(e). To establish an FDCPA violation, "three elements must be proven:  '(1) the plaintiff [must] be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements.'" *Gabriel v. Experian Info. Sols., Inc.*, No. 22-CV-2174(PKC)(MMH), 2023 WL 5935834, at *3 (E.D.N.Y. Sept. 12, 2023) (quoting *Skvarla v. MRS BPO, LLC*, No. 21 Civ. 55(ER), 2021 WL 2941118, at *2 (S.D.N.Y. July 12, 2021)).

Plaintiff fails to state a claim against any Defendant under the FDCPA. The Amended Complaint contains no allegations whatsoever that any of the Defendants are "debt collectors" as defined by the statute. *See* 15 U.S.C. § 1692a(6) (defining "debt collector"). To the contrary, the most liberal reading of the Amended Complaint suggests that the Co-op Defendants sought to collect rent and corresponding charges that Plaintiff was required to pay. The Second Circuit has held that "creditors are

18

not subject to the FDCPA." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998); *Lautman v. 2800 Coyle St. Owners Corp.*, No. 13-CV-967(ARR)(VVP), 2014 WL 2200909, at *4 (E.D.N.Y. May 23, 2014) (dismissing FDCPA claim and holding that a landlord was a creditor "whose conduct is not regulated by the statute").

As there is no plausible allegation that the Co-op Defendants had assigned a debt to a debt collector, or that they were acting as debt collectors themselves, Cymbalsky fails to state a claim under the FDCPA against the Co-op Defendants. *See Robinson v. Victory Mitsubishi*, No. 23-CV-385(LJL), 2023 WL 5509312, at *4 (S.D.N.Y. Aug. 24, 2023) (dismissing FDCPA claim where the defendant "was attempting to exercise rights belonging to it as Plaintiff's creditor, and not as a debt collector"); *Brighton v. McIntosh*, No. 10 Civ. 8282(PKC), 2011 WL 3585982, at *2 (S.D.N.Y. July 28, 2011) (dismissing FDCPA claim and holding that the defendant was not a debt collector because "the payment allegedly sought . . . [was] based on a debt allegedly owed by the plaintiff to the defendant directly"); *Yetnikoff v. Mascardo*, No. 06 Civ. 13494(GEL), 2007 WL 690135, at *2 (S.D.N.Y. Mar. 6, 2007) (holding that the FDCPA was inapplicable because "that statute pertains to the behavior of debt collectors, not landlords").

With respect to the Finkelstein Defendants, the Amended Complaint again contains no facts related to the FDCPA and Plaintiff does not allege that the Finkelstein Defendants were debt collectors attempting to collect a debt. Although attorneys or law firms that regularly seek to collect debts may be considered "debt

collectors" under the FDCPA, *see Onfroy v. Law Offices of Geoffrey T. Mott, P.C.*, No. 22-CV-2314(EK)(LB), 2024 WL 4350489, at *5 (E.D.N.Y. Sept. 30, 2024), Plaintiff does not allege that the Finkelstein Defendants regularly engage in such conduct. *Ciampa v. Law Offices of Igor Dodin, PLLC*, 978 F. Supp. 2d 174, 177 (E.D.N.Y. 2013) (holding that a law firm that did not regularly attempt to collect debts was not a debt collector). Instead, the most liberal reading of the Amended Complaint suggests that Plaintiff's rent bill may have included a charge for services that the Finkelstein Defendants provided to the Co-op Defendants. As Plaintiff does not allege that the Finkelstein Defendants regularly attempt to collect debts, or that they contacted him to collect a debt that had been assigned to them, Plaintiff fails to state an FDCPA violation. *See Gabriel*, 2023 WL 5935834, at *3 (dismissing FDCPA claim where the plaintiff failed to allege that the defendant was a debt collector within the meaning of the FDCPA or that a third party was attempting to collect a debt); *Ciampa*, 978 F. Supp. 2d at 177. Accordingly, both motions to dismiss are granted insofar as Plaintiff asserts a claim arising under the FDCPA.

### E.    Leave to Amend

Plaintiff does not seek leave to file a second amended complaint. *See* DE [45]. He has amended his Complaint once, and, based on the allegations contained in the Amended Complaint and the bases for dismissal described herein, further amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of *pro se* plaintiff's complaint without leave to amend where the plaintiff suggested "no new material she wishe[d] to plead" to cure deficiencies);

*Currin*, 2021 WL 4710485, at *4 (declining to grant leave for the *pro se* plaintiff to file a second amended complaint where amendment would be futile).    Therefore, Plaintiff's Amended Complaint is dismissed with prejudice and without leave to amend.

## IV.    CONCLUSION

For the reasons set forth herein, the Finkelstein Defendants' motion to dismiss, DE [43], is granted in its entirety and the Co-op Defendants' motion to dismiss, DE [45], is granted in its entirety.    Plaintiff's Amended Complaint is dismissed in its entirety with prejudice.    The Clerk of the Court is directed to close this case.

Dated:    Central Islip, New York          **SO ORDERED**
          January 8, 2025

                                          s/ Steven I. Locke
                                          STEVEN I. LOCKE
                                          United States Magistrate Judge